IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Sean Sadler, and Individual, and S. Sadler, Inc., a Pennsylvania Corporation | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Civil Action No. 9-411 |
| Balboa Capital Corp., | ) ) | |
| Defendant. | ) | |

AMBROSE, Chief District Judge

**OPINION**
**and**
**ORDER OF COURT**

This litigation has its roots in a contractual dispute involving financing for a machine used in the scrap metal business. Plaintiff Sean Sadler ("Sadler") lives in Westmoreland County, Pennsylvania. L.S. Sadler,[1] a Pennsylvania corporation, is in the scrap metal business. It buys and sells scrap metal around the world.

In May of 2008 acting on behalf of L.S. Sadler, Sadler obtained a quotation from a third party[2] for the purchase of a "container tilter." See Complaint, ¶5. The purchase price was $110,500. Id., ¶ 6. The quotation required the payment of $33,000

---

[1] I note that the Complaint originally filed in the Court of Common Pleas of Allegheny County, Pennsylvania identifies "Sadler" and "S. Sadler, Inc." as Plaintiffs in the caption. That Complaint was removed to this Court with that caption. Presumable "S. Sadler, Inc." is a typographical error and Plaintiffs intended to identify "L.S. Sadler, Inc." as the Plaintiff, given that "L.S. Sadler, Inc." is used in the body of the Complaint. See Complaint, paragraph 2. If in fact this is a mere typographical error, Plaintiffs should act so as to correct the caption.

[2] The third party was A-Ward Attachments, from Auckland, New Zealand.

1

on or before June 6, 2008 as a down payment and promised delivery by June 27, 2008. Id., ¶ 7.

Sadler contacted Defendant Balboa Capital Corporation ("Balboa"), a California corporation, to obtain financing for the purchase of the equipment. Id., ¶ 8. Balboa accepted the terms as required by the third party and agreed to provide the financing for the purchase of the container tilter. Id., ¶ 9. More specifically, Balboa agreed to fund the purchase by immediately tendering $33,000 to the third party following which the third party would deliver the tilter on or before June 27, 2008. Id., ¶ 10.

On May 29, 2008, Balboa emailed to Sadler a document package containing a Master Lease Agreement ("the Lease"). Sadler refused to enter into the Lease and requested an Equipment Finance Agreement ("EFA") instead. Balboa subsequently emailed an EFA which Sadler signed on behalf of L.S. Sadler and returned with a down payment on the loan. Id., ¶ 14.

At approximately the same time, and with Balboa's knowledge, L.S. Sadler entered into an agreement to sell 2500-2700 metric tons of scrap steel at $500 per ton and to ship the steel to a customer in Korea between July 15 and August 15, 2008. Id., ¶ 15. L.S. Sadler intended to use the new container tilter to fulfill this order and Balboa knew of its intentions in this regard. Id., ¶ 17. Nevertheless, Balboa failed to send the $33,000 down payment to the third party owner of the container tilter. Id., ¶ 18. Though Balboa eventually agreed to wire the funds, the delay caused a corresponding delay in the arrival of the tilter until July 29, 2008. Id., ¶ 21-22.

Though L.S. Sadler immediately began booking containers in which to load scrap steel and making its monthly payments to Balboa, the world-wide market in scrap metal began to fall precipitously. In January of 2009 the customer in Korea refused to accept any more scrap steel at $500 per ton and canceled its order. Id., ¶ 27. L.S. Sadler lost profits in the amount of $625,000 as a result. Id., ¶ 29.

Sadler (and "S. Sadler, Inc.") thereafter filed suit against Balboa in the Court of Common Pleas of Allegheny County, Pennsylvania. Plaintiffs assert a claim for breach of contract (Count I) based upon Balboa's failure to comply with the terms of the quotation; fraudulent misrepresentation (Count II), based upon the allegation that Balboa intended to force the seller of the container tilter to accept $15,000 as down payment rather than $33,000; negligent misrepresentation (Count III), based largely upon the same allegations as those contained in Count II; and fraud (Count IV), based upon the allegation that Sadler did not sign the Master Lease Agreement which Balboa contends was signed. Balboa subsequently removed the Complaint to the United States District Court for the Western District of Pennsylvania based upon diversity jurisdiction.

Balboa has filed a Motion to Dismiss. See Docket No. [3]. According to Balboa, both the Master Lease Agreement and the Equipment Financing Agreement contain a forum selection clause mandating that any suit be filed in Orange County, California. See EFA, ¶ 25 and Lease, ¶ 30. As such, Balboa insists, venue in the Western District of Pennsylvania is improper and the Complaint should be dismissed with prejudice.

3

After careful consideration, and for the reasons set forth below, the Motion is denied.

## Standard of Review

In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, I must construe all allegations of the complaint in the light most favorable to the plaintiff. I must also accept as true all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. Worldcom, Inc. v. Graphnet, Inc., 343 F.3d 651, 653 (3d Cir. 2003). However, as the Supreme Court made clear in Bell Atlantic v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007), the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Thus, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (citations omitted).

## Analysis

I will accept for purposes of this Motion that Balboa proffered to L.S. Sadler two documents, a Lease and an EFA. I will further accept that each contained a forum selection clause designating Orange County, California as the proper venue for any disputes arising from a breach thereof. What I cannot accept at this procedural stage, however, is that Sadler is bound by either of those.

In the Complaint Sadler specifically disavows having ever signed the Lease. The implication is that any signature contained therein is forged. Indeed, Sadler

contends that he declined the terms of the Lease and instead requested that Balboa provide the EFA. At this stage of the proceedings I must accept as true all allegations set forth in the Complaint and all reasonable inferences arising therefrom. My obligation in this regard mandates that I reject Balboa's contention that Sadler must comply with the forum selection clause contained in the Lease. Simply stated, the parties did not have a contract with respect to the Lease and thus the presence of a forum selection clause contained therein is meaningless.

Turning to the EFA, Sadler admits that he signed the EFA on behalf of L.S. Sadler. See Complaint, ¶14. Yet the EFA contained a clause which provided that:

> [t]his agreement is effective only upon execution by the authorized officer of [Balboa] following [L.S. Sadler, Inc.'s] execution thereof, and upon execution Creditor shall fund the Equipment Cost / Advanced.

See ¶ 5 of EFA, Ex. C to Complaint. Significantly, the Complaint does not contain any averments that Balboa ever executed the EFA or that the EFA became a binding contract. See Complaint, ¶14. Indeed, Sadler indicates that he never received an executed copy of the EFA from Balboa. A fair inference from this averment is that Balboa never executed the EFA and that the agreement thus never became effective. Further, the breach of contract claim is based upon the failure to comply with the terms of the quotation. This is the contract referenced, not the EFA. Consequently, at this stage of the pleadings, I must accept Sadler's contention that the EFA was not executed and that the forum selection clause is not enforceable.[3]

---

[3] I note that despite the opportunity, Balboa did not file a Reply brief addressing the issue of how this Court could determine, in the face of an

5

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Sean Sadler, and Individual, and S. Sadler, Inc., a Pennsylvania Corporation | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Civil Action No. 9-411 |
| Balboa Capital Corp., | ) ) | |
| Defendant. | ) | |

AMBROSE, Chief District Judge

### ORDER OF COURT

AND NOW, this 22nd day of April, 2009, after careful consideration, and for the reasons set forth in the accompanying Opinion, the Motion to Dismiss (Docket No. [3]) is DENIED. As set forth in the Order issued at Docket No. [2], a Case Management Conference is scheduled for May 14, 2009 at 9:15 a.m.

BY THE COURT:

/s/Donetta W. Ambrose
  Donetta W. Ambrose,
  Chief U.S. District Judge

---

averment in the Complaint that the EFA may not have been executed by Balboa, the EFA constituted a binding legal contract thus requiring enforcement of the forum selection clause.