IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Sean Sadler, an individual, and S. Sadler Inc., a Penn. Corp. | ) ) ) | |
| Plaintiffs. | ) ) | |
| v. | ) ) | Civ. Action No. 9-411 |
| Balboa Capital Corp. | ) ) ) | |
| Defendant. | ) | |

AMBROSE, Senior Judge

## Opinion and Order of Court

Plaintiffs Sean Sadler and L.S. Sadler, Inc. (collectively hereinafter "Sadler"), filed a complaint asserting four claims against Defendant Balboa Capital Corp. ("Balboa"): (i) breach of contract, (ii) fraudulent misrepresentation, (iii) negligent misrepresentation, and (iv) fraud arising from an agreement to fund Sadler's purchase of a tilter. Defendant moves for summary judgment as to Counts II-IV of the Complaint and asserts that Plaintiffs' claims are barred by (i) the gist of the action doctrine and (ii) the economic loss doctrine. Def.'s Mot., ECF No. [48]; Def.'s Br., ECF No. [49]. For the reasons set forth below, I grant in part and deny in part Defendant's motion for summary judgment.

I. Factual Background

As the facts are well-known to the parties, and I write primarily for their benefit, I briefly will summarize the facts that give rise to this litigation. In May of 2008, Sadler obtained a quotation for the purchase of a piece of equipment, a container tilter, from a third party, A-Ward of New Zealand. The quotation required a $33,000 down payment and the tilter was to ship by

June 6, 2008 with delivery in the United States set for June 27, 2008. Sadler contacted Balboa to finance the sale, and Balboa agreed to the terms of the quotation. On May 29, 2008, Balboa emailed Sadler a Master Lease Agreement ("the Lease"); however, Sadler refused the Lease and instead requested an Equipment Finance Agreement ("EFA"). Upon receipt of the EFA documents from Balboa, Sadler signed and returned them to Balboa, along with a down payment of $6192.52. Balboa never returned a copy of the EFA signed by Balboa to Sadler. Around this same time, and with Balboa's knowledge, Sadler entered into a sales contract to scrap and ship steel to a customer in Korea between July 15 and August 15, 2008. Balboa was aware of this sales contract and Sadler's intent to use the new tilter to complete the order. Nevertheless, Balboa unilaterally attempted to negotiate the down payment required by A-Ward. Although Balboa eventually sent the $33,000 down payment, Balboa's delay caused a corresponding delay in the delivery of the tilter. Sadler did not receive the tilter until July 29, 2008. Although Sadler immediately began to fulfill the order for the customer in Korea, the world-wide market in scrap metal began to fall precipitously, and in January of 2009, the customer canceled his order, resulting in lost profits to Sadler in the amount of $625,000.

II. Standard of Review

Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material when it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Rule 56 mandates the entry of judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In considering a motion for summary judgment, the Court must examine the facts in the light most favorable to the party opposing the motion. *Int'l Raw Materials, Ltd. V. Stauffer Chemical Co.*, 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex*, 477 U.S. at 322. Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. *Id.* at 324.

III. Analysis

As this federal court's jurisdiction is based on diversity of citizenship, this case must be adjudicated in accordance with applicable state law. *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). The parties do not dispute that Pennsylvania law controls the substance of this action. Federal law governs this case procedurally. *Hanna v. Plumer*, 380 U.S. 460, 473-74 (1965).

A. Gist of the Action Doctrine[1]

Whether the gist of the action doctrine applies is a question of law. *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 104 (3d Cir. 2001). The doctrine bars a plaintiff

---

[1] Although the Pennsylvania Supreme Court has not explicitly adopted the gist of the action doctrine, I join the United States Court of Appeals for the Third Circuit and the Pennsylvania Superior Court in predicting that it would do so. See *Williams v. Hilton Group PLC*, 93 Fed. Appx. 384, 385 (3d Cir. 2004); *EToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 14-17 (Pa. Super. 2002).

from proceeding with tort claims that replicate those brought for breach of contract. *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 680 n.8 (3d Cir. 2002) (citing *Phico Ins. Co. v. Presbyterian Med. Serv. Corp.*, 633 A.2d 753 (Pa. Super. 1995)). "'When a plaintiff alleges that the defendant committed a tort in the course of carrying out a contractual agreement, Pennsylvania courts examine the claim and determine whether the 'gist' or gravamen of it sounds in contract or tort.'" *Fidelity Nat. Title Ins. Co. v. Craven*, No. 12-4306, 2012 WL 5881856, at *6 (E.D. Pa. Nov. 21, 2012) (citing *Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc.,* 40 F. Supp. 2d 644, 651 (W.D. Pa. 1999)). In determining the gist of the claim, the court must decide "the source of the duties allegedly breached." *Id.* (citing *Sunburst Paper, LLC v. Keating Fibre Int'l Inc.*, No. 06-3957, 2006 WL 3097771, at *2 (E.D. Pa. Oct. 30, 2006)). Because tort actions address "breaches of duties imposed by law as a matter of social policy" rather than duties agreed to by the parties, as is the case with a contract claim, where tort actions are based upon duties that entwine with contractual obligations, they will be barred by the gist of the action doctrine. *Id.* (quoting *EToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10 (Pa. Super. 2002)). Specifically, "the doctrine bars tort claims: (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." *Id.*

Defendant asserts that the gist of the action doctrine bars Plaintiffs' claims at Count II-fraudulent misrepresentation, Count III-negligent misrepresentation, and Count VI-fraud. Def.'s

4

Br., 4-6.[2] Because I find that Plaintiffs' claims at Counts II and III merely recast Plaintiffs' breach of contract claim at Count I, Plaintiffs' claims of fraudulent misrepresentation and negligent misrepresentation are barred by the gist of the action doctrine. Here, the breach of duty alleged—Balboa's duty to transmit a $33,000 down payment to A-ward for timely delivery of a tilter to Sadler—sounds in contract. Although Sadler alleges that Balboa's misrepresentations induced Plaintiff to contract with Balboa to finance its purchase of the tilter, as well as enter additional sales agreements where order fulfillment depended on Sadler's ability to use the tilter, it is well-established that "promises made to induce a party to enter into a contract that eventually become part of the contract itself cannot be the basis for a fraud-in-the-inducement claim under the gist of the action doctrine." *Freedom Prop., L.P. v. Lansdale Warehouse Co. Inc.*, No. 06-5469, 2007 WL 2254422 (E.D. Pa. Aug. 2, 2007); *see also Owen J. Roberts Sch. Dist. v. HTE, Inc.*, No. 02-7830, 2003 WL 735098 (E.D. Pa. Feb. 28, 2003) (barring claims according to gist of the action doctrine where Plaintiff "inexplicably transformed" contractual duties into fraud claims); *EToll*, 811 A.2d at 19 ("[C]ourts have **not** carved out a categorical exception for fraud . . . [r]ather, the cases seem to turn on the question of whether the fraud concerned the performance of contractual duties. If so, then the alleged fraud is generally held to be merely collateral to a contract claim for breach of those duties.") (emphasis in original).

However, I find that the gist of the action doctrine does not bar Plaintiffs' claim at Count IV, which is an allegation of fraud in the execution. *See* Complaint, ECF No. 1-1, ¶¶ 42-50. Fraud in the execution "occurs when important terms of a contract are altered or omitted such that the agreement is radically different from what the defrauding party was led to believe." *Kinsky v. Perone,* No. 10-6075, 2012 WL 1392367 (E.D. Pa. Apr. 20, 2012). Here, Sadler

---

[2] The breach of contract claim at issue is the quotation, not the Lease. *See* Complaint at ¶¶ 30-32. The fraud alleged at Count IV is based upon the allegation that Sadler did not sign the Lease, which Balboa contends was signed. *Id.* at ¶¶ 42-50.

claims that he signed and returned to Balboa an Equipment Finance Agreement ("EFA"); however, Balboa maintains that Sadler executed a Master Lease Agreement ("the Lease") instead. Sadler Dep., ECF No. 58-2, 67-68; Fiorentino Dep., ECF No. 58-9, 16. Sadler never received an executed copy of the EFA back from Balboa, and Sadler disavows having signed the copy of the Lease that Balboa has produced. Sadler Dep., 116-18. Additionally, Sadler alleges that he never executed the personal guarantee contained within the Lease and which Balboa now seeks to enforce. *Id.* at 44-45 & 56. These facts, when viewed in the light most favorable to the non-moving party, as I must at summary judgment, suggest that Balboa never executed the EFA and that the agreement thus never became effective. Accordingly, because Balboa is trying to enforce a contract that is markedly different from the one to which Sadler agreed, Sadler's fraud in the execution claim is not barred by the gist of the action doctrine.

B. Economic Loss Doctrine

Defendant also argues that the economic loss doctrine bars Sadler's claims of fraudulent misrepresentation, negligent misrepresentation, and fraud. Def.'s Br., 6. Specifically, Balboa alleges that Sadler's claims are barred by the doctrine because Sadler does not allege that he suffered physical injury or property damage resulting from Balboa's alleged misconduct. *Id.* Because I have already ruled that Counts II and III of Plaintiffs' complaint are barred by the gist of the action doctrine, I need not assess the applicability of the economic loss doctrine as to those Counts. Therefore, my analysis of the economic loss doctrine focuses on Count IV, fraud.

In Pennsylvania, the economic loss doctrine prohibits a plaintiff from recovering for the economic losses resulting from a defendant's negligence where the plaintiff suffered no physical injury or property damage.[3] *Spivack v. Berks Ridge Corp. Inc.*, 586 A.2d 402, 405 (Pa. Super.

---

[3] In *REM Coal Co., Inc. v. Clark Equip. Co.*, 563 A.2d 128 (Pa. Super. 1989), the Pennsylvania Superior Court embraced the principles of the economic loss doctrine as stated by the Supreme Court in *East River S.S. Corp. v.*

6

1990) (citing *Aikens v. Baltimore and Ohio R.R. Co.*, 501 A.2d 277, 279 (1985)). Similar to the gist of the action doctrine, the purpose of the economic loss doctrine, as adopted in Pennsylvania, is "maintaining the separate spheres of the law of contract and tort." *New York State Elec. & Gas Corp. v. Westinghouse Elec. Corp.*, 564 A.2d 919 (Pa. Super. 1989). The rationale behind the doctrine is that "negligent harm to economic advantage alone is too remote for recovery under a negligence theory." *Aikens*, 501 A.2d at 279.

While application of the doctrine to loss resulting from a defendant's intentional acts is not necessarily precluded; generally, Pennsylvania courts apply the economic loss doctrine to claims involving negligence. *See Bilt-Rite Contractors Inc. v. The Architectural Studio*, 866 A.2d 270, 288 (Pa. 2005); *David Pflumm Paving & Excavating, Inc. v. Foundation Services Co.*, 816 A.2d 1164, 1171 (Pa. Super. 2003) (applying economic loss doctrine to bar negligent misrepresentation claim and granting defendant summary judgment as to Plaintiffs' fraudulent misrepresentation claim because it found no evidence to support an intent to mislead); *Spivack*, 586 A.2d at 405; *Aikens*, 501 A.2d at 270; *but see Werwinski v. Ford Motor Co.*, 286 F.3d 661, 681 (3d Cir. 2002) (affirming application of economic loss doctrine to bar fraudulent concealment claim). The Pennsylvania Supreme Court has not opined on the application of the economic loss doctrine involving claims of intentional fraud; however, a few federal district courts have refused to apply the doctrine to intentional fraud. *See First Republic Bank v. Brand*, 2000 WL 33394627, at *6 (Pa. C. C. P. Dec. 19, 2000) (reviewing split among federal district courts in application of economic loss doctrine to intentional torts). The courts refusing to apply the doctrine to intentional torts find that claims should not be barred where the representation is

---

*Transamerica Delaval, Inc.*, 476 U.S. 858, 866, 871 (1986) (limiting products liability remedies to prevent "contract law [from] drown[ing] in a sea of tort.") The Pennsylvania Supreme Court, in a professional negligence claim against architects, recognized the economic loss doctrine but refused to apply it to "claims of negligent misrepresentation sounding under Section 552 [of the Restatement (Second) of Torts]." *Bilt-Rite Contractors Inc. v. The Architectural Studio*, 866 A.2d 270, 288 (Pa. 2005).

7

intentionally false. *Id.* I agree. "Although it makes sense to allow parties to allocate the risk of mistakes or accidents that lead to economic loss, it does not make sense to extend the doctrine to intentional acts taken by one party to subvert the purpose of a contract." *Price v. Freeze & Frizz Inc.*, 2009 WL 6602437 (Pa. C. C. P. Nov. 29, 2009) (citing *Smith Reinhart Ford*, 69 Pa. D. & C. 4th 432, 437 (Pa. C. C. P. 2004)).

Here, in alleging fraud in the execution, Sadler claims that Balboa seeks to enforce a contract that is radically different than the terms he agreed to and which contains signatures that are not his. Therefore, this is not a situation where the Court needs to be concerned about the spheres of tort and contract law becoming entangled. Because I find that Plaintiffs seek recovery for economic losses that flow from alleged intentional tortious acts, rather than a contractual agreement between the parties, I decline to apply the economic loss doctrine as to Count IV.

IV. Count IV – Fraud

In order to establish fraud in Pennsylvania, a plaintiff must prove six elements: 1) a misrepresentation, 2) material to the transaction, 3) made falsely, 4) with the intent of misleading another to rely on it, 5) justifiable reliance resulted, and 6) injury was proximately caused by the reliance. *Santana Products v. Bobrick Washroom Equipment*, 401 F.3d 123, 136 (3d Cir. 2005) (citing *Viguers v. Philip Morris USA, Inc.*, 837 A.2d 534 (Pa. Super. 2003). Having carefully considered the facts in the light most favorable to Sadler, the nonmoving party, I find that there is a material question of fact as to whether a Lease agreement existed between Sadler and Balboa. Although Balboa's transmittal of the down payment for Sadler's purchase of the tilter was delayed, a few months after Sadler executed the EFA, Balboa fully financed Sadler's purchase. Sadler relied on his belief that he had executed an EFA to finance the purchase; however, Balboa asserts that Sadler is in breach of a different agreement (the Lease) and seeks to

enforce terms different than those to which Sadler agreed, including monies owed for breach of the Guaranty. *See* Letter to Sean Sadler from Michael Losey, Director of Legal Services, Balboa Capital Corp., re: Breach of Agreement and Guaranty, ECF No. 1, Exhibit H. Although Defendant argues that Plaintiffs merely allege the potential for injury because Plaintiffs' complaint "sets forth a timeline of events and concludes with Plaintiffs' fear of being sued," *see* Complaint, ¶¶ 42-50, Defendant's letter dated March 10, 2009, on its face, shows economic injury. Because the letter demands $169,785.59 for Sadler's breach of (the Lease) Agreement and Guaranty, as well as $90,200.00 for the current market value of the tilter, in the absence of contrary information, I find that a reasonable jury could conclude that Sadler justifiably relied on his execution of the EFA and that he has sustained economic losses resulting from Balboa's fraudulent execution of the Lease agreement.

V. Conclusion

Based on the foregoing, I grant Defendant's motion for summary judgment dismissing Counts II and III and deny Defendant's motion as to Count IV.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Sean Sadler, an individual, and S. Sadler Inc., a Penn. Corp. | ) ) ) | |
| Plaintiffs. | ) ) | |
| v. | ) ) | Civ. Action No. 9-411 |
| Balboa Capital Corp. | ) ) ) | |
| Defendant. | ) | |

AMBROSE, Senior Judge

## ORDER

Having carefully considered Defendant's motion for summary judgment, ECF No. [48], and accompanying brief, ECF No. [49], Plaintiffs' opposition thereto, ECF No. [58], and Defendant's reply, ECF No. [62], it is hereby ORDERED that Defendant's motion for summary judgment is GRANTED at Counts II and III and DENIED at Count IV.

Dated: December 18, 2012

                                             /s/ Donetta W. Ambrose
                                             Donetta W. Ambrose
                                             Senior Judge, U.S. District Court